Laurence M. Rosen, Esq. (SBN 219683)
**THE ROSEN LAW FIRM, P.A.**
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

*Counsel for Plaintiff*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| BENJAMIN WASSON, Individually and On Behalf of All Others Similarly Situated, | Case No: |
| Plaintiff, | **CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** |
| v. | **JURY TRIAL DEMANDED** |
| LOGMEIN, INC., WILLIAM R. WAGNER, and EDWARD K. HERDIECH, | |
| Defendants. | |

Plaintiff Benjamin Wasson ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the defendants' public documents, conference calls and announcements made by defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding LogMeIn, Inc. ("LogMeIn" or the

"Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is a federal securities class action on behalf of a class consisting of all persons and entities other than Defendants who purchased or otherwise acquired the publicly traded securities of LogMeIn between March 1, 2017 and July 26, 2018, both dates inclusive (the "Class Period"). Plaintiff seeks to recover compensable damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder.

## JURISDICTION AND VENUE

2.      The claims asserted herein arise under and pursuant to §§10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b) and §78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. §240.10b-5).

3.      This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §1331 and §27 of the Exchange Act.

4.      Venue is proper in this District pursuant to §27 of the Exchange Act (15 U.S.C. §78aa) and 28 U.S.C. §1391(b) as the Company conducts business and has operations in this District, and the alleged misstatements entered and subsequent damages took place within this District.

5.      In connection with the acts, conduct and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

Class Action Complaint for Violation of the Federal Securities Laws

**PARTIES**

6.     Plaintiff, as set forth in the accompanying certification, incorporated by reference herein, purchased LogMeIn common stock during the Class Period, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

7.     Defendant LogMeIn is a Delaware corporation, located in Goleta, California. LogMeIn provides a portfolio of cloud-based communication and collaboration, identity and access, and customer engagement and support solutions. The Company's securities are traded on NASDAQ under the ticker symbol "LOGM."

8.     Defendant William R. Wagner ("Wagner") has served as LogMeIn's President and Chief Executive Officer ("CEO") since December 2015 and has served on the Company's Board of Directors since March 2015. Prior to that, he served as the Company's Chief Operating Officer ("COO").

9.     Defendant Edward K. Herdiech ("Herdiech") has served as LogMeIn's Chief Financial Officer ("CFO") and Treasurer since January 2015.

10.     Defendants Wagner and Herdiech are collectively referred to hereinafter as the "Individual Defendants."

11.     Each of the Individual Defendants:

(a)     directly participated in the management of the Company;

(b)     was directly involved in the day-to-day operations of the Company at the highest levels;

(c)     was privy to confidential proprietary information concerning the Company and its business and operations;

(d)     was directly or indirectly involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein;

Class Action Complaint for Violation of the Federal Securities Laws

(e) was directly or indirectly involved in the oversight or implementation of the Company's internal controls;

(f) was aware of or recklessly disregarded the fact that the false and misleading statements were being issued concerning the Company; and/or

(g) approved or ratified these statements in violation of the federal securities laws.

12. The Company is liable for the acts of the Individual Defendants and its employees under the doctrine of *respondeat superior* and common law principles of agency because all of the wrongful acts complained of herein were carried out within the scope of their employment.

13. The scienter of the Individual Defendants and other employees and agents of the Company is similarly imputed to the Company under *respondeat superior* and agency principles.

14. The Company and the Individual Defendants are referred to herein, collectively, as the "Defendants."

## SUBSTANTIVE ALLEGATIONS
### Background

15. On February 1, 2017, LogMeIn issued a press release which "announced the completion of its previously disclosed merger with Citrix Systems, Inc.'s (NASDAQ:CTXS) GetGo, Inc. subsidiary, a wholly owned subsidiary consisting of Citrix's GoTo family of service offerings."

## Materially False and Misleading
### Statements Issued During the Class Period

16. On March 1, 2017, the Company filed its annual report for the fiscal year ended December 31, 2016 on Form 10-K (the "2016 10-K") with the SEC, which provided the Company's annual financial results and position. The 2016 10-K was signed by Defendants Wagner and Herdiech. The 2016 10-K also contained signed

Class Action Complaint for Violation of the Federal Securities Laws

certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") by Defendants Wagner and Herdiech attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal controls over financial reporting, and the disclosure of all fraud.

17.    The 2016 10-K stated that many of the Company's services are offered through subscription contracts, stating in relevant part:

> The services offered by us are generally sold pursuant to agreements that are one year in duration. Customers have no obligation to renew their subscriptions after their subscription period expires, and these subscriptions may not be renewed on the same or on more profitable terms. As a result, our ability to grow depends in part on subscription renewals.

18.    The 2016 10-K stated that, as the Company "continue[d] to integrate the GoTo Business, [it would] determine a renewal rate and calculation methodology that [would be] appropriate for the combined company[,]" stating in relevant part:

> We derive our revenue primarily from subscription fees for our premium services from enterprise customers, SMBs, IT service providers, mobile carriers, customer service centers, OEMs and consumers and to a lesser extent, from the delivery of professional services primarily related to our Internet of Things business. The majority of customers who subscribe to our services pay in advance, typically with a credit card, for their subscription. . . . Typically, a subscription automatically renews at the end of a subscription period unless the customer specifically terminates it prior to the end of the period. . . . Historically, we have calculated our gross renewal rate on an annualized dollar basis across all product lines as of the end of each period. As we continue to integrate the GoTo Business, we will determine a renewal rate and calculation methodology that is appropriate for the combined company.

19.    On February 20, 2018, the Company filed its annual report for the fiscal year ended December 31, 2017 on Form 10-K (the "2017 10-K") with the SEC, which provided the Company's financial results and position. The 2017 10-K was

signed by Defendants Wagner and Herdiech. The 2017 10-K also contained signed SOX certifications by Defendants Wagner and Herdiech attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal controls over financial reporting, and the disclosure of all fraud.

20.     The 2017 10-K stated that many of the Company's services are offered through subscription contracts, stating in relevant part:

> The services offered by us are generally sold pursuant to agreements that are one year in duration. Customers have no obligation to renew their subscriptions after their subscription period expires, and these subscriptions may not be renewed on the same or on more profitable terms. As a result, our ability to grow depends in part on subscription renewals.

21.     The 2017 10-K stated that the Company would "monitor and assess" its renewal rate calculation as it continued to "integrate the GoTo Business," stating in relevant part:

> We derive our revenue primarily from subscription fees for our premium services from enterprise customers, SMBs, IT service providers, mobile carriers, customer service centers, OEMs and consumers and to a lesser extent, from usage fees from our audio services and the delivery of professional services primarily related to our customer engagement and support business. Our customers, who subscribe to our services, generally pay in advance and typically pay with a credit card, for their subscription. . . . Typically, a subscription automatically renews at the end of a subscription period unless the customer specifically terminates it prior to the end of the period. . . . Historically, we have calculated our gross renewal rate on an annualized dollar basis across all product lines as of the end of each period. As we continue to integrate the GoTo Business, we will monitor and assess our renewal rate calculation and methodology to ensure that it is appropriate for the combined company.

22.     The statements contained in ¶¶16-21 were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, operational and financial results, which

were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) LogMeIn's business practices had negatively impacted renewal rates for certain of its services; and (2) as a result, Defendants' public statements were materially false and misleading at all relevant times.

### The Truth Emerges

23.     On July 26, 2018, after market close, the Company held an earnings call to report its second quarter 2018 earnings results. During the call, Defendants Wagner and Herdiech stated that the Company implemented strategies which negatively impacted renewal rates of certain of its services, including amongst its GoTo clients:

**William Raymond Wagner** - . . .*However, tonight, I'd like to begin my comments discussing an area where our performance in the quarter did not meet our expectations, specifically the traditional communications and collaboration business, where our combination of imperfect execution and some hangover effects of last year's merger with the GoTo business led to disappointing renewal rates.*

*As we move through the quarter, it became increasingly clear that some of the business practices we put in place following the merger were negatively impacting renewal rates. Aggressively moving customers from monthly to annual payments, changing business terms and conditions and barriers we created the auto renewal process all contributed to friction for our customers and made us harder to do business with. In addition, we failed to deliver some planned product enhancements and frankly were slow to address some product quality issues that crept into the product last year as we merged and realigned engineering teams. The impact of these issues was amplified by competitors who took advantage of these execution challenges and successfully target our customer base.*

\*\*\*

**Daniel Bergstrom - RBC Capital Markets LLC**: . . . So could you review the efforts around moving the GoTo base from monthly to annual contract? And then, how did that progress over the last year? Is there some measurement or percentage of the user base converted or

some way to think about that? And then are we through with that conversion effort at this point?

**Edward K. Herdiech -** Yeah. So, this is Ed. ***So we are tracking it a couple different ways with respect to renewals in terms of the kind of dollar amount that we were converting. And in Q3, Q4, Q1 and end of Q2 we converted between $10 million and $15 million a quarter and that took the renewal base from, in the 30% kind of annual to in the 50%.*** And as you can imagine, we've kind of relaxed our business rules. There's still opportunity to do that. But we're being really flexible. And so we would expect that activity to come down in the second half of the year. At the same time, we are also kind of lapping our efforts to do this. ***This would be our – the second half of the year would have been our second time through the renewal base, so we were originally planning for that to be lower anyway. And so, there will be some impact, but that's where we're at.***

(Emphasis added.)

24.     On this news, shares of LogMeIn fell $26.60 per share or over 25% to close at $77.85 per share on July 27, 2018.

### PLAINTIFF'S CLASS ACTION ALLEGATIONS

25.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired the publicly traded securities of LogMeIn during the Class Period (the "Class") and were damaged upon the revelation of the alleged corrective disclosures. Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

26.     The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, LogMeIn securities were actively traded on the NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class.

Record owners and other members of the Class may be identified from records maintained by the Company or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

27.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

28.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

29.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the financial condition, business, operations, and management of the Company;

- whether Defendants' public statements to the investing public during the Class Period omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading;

- whether the Individual Defendants caused the Company to issue false and misleading SEC filings and public statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading SEC filings and public statements during the Class Period;

Class Action Complaint for Violation of the Federal Securities Laws

- • whether the prices of LogMeIn securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- • whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

30. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

31. Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- • Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- • the omissions and misrepresentations were material;

- • LogMeIn securities are traded in efficient markets;

- • the Company's securities were liquid and traded with moderate to heavy volume during the Class Period;

- • the Company traded on the NASDAQ, and was covered by multiple analysts;

- • the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- • Plaintiff and members of the Class purchased and/or sold LogMeIn securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

Class Action Complaint for Violation of the Federal Securities Laws

32.     Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

33.     Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

### Violation of Section 10(b) of The Exchange Act and Rule 10b-5
### Against All Defendants

34.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

35.     This Count is asserted against the Company and the Individual Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

36.      During the Class Period, the Company and the Individual Defendants, individually and in concert, directly or indirectly, disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

37.     The Company and the Individual Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they:

- employed devices, schemes and artifices to defraud;

- made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

- engaged in acts, practices and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their purchases of LogMeIn securities during the Class Period.

38.   The Company and the Individual Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated, or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the securities laws. These defendants by virtue of their receipt of information reflecting the true facts of the Company, their control over, and/or receipt and/or modification of the Company's allegedly materially misleading statements, and/or their associations with the Company which made them privy to confidential proprietary information concerning the Company, participated in the fraudulent scheme alleged herein.

39.   Individual Defendants, who are the senior officers and/or directors of the Company, had actual knowledge of the material omissions and/or the falsity of the material statements set forth above, and intended to deceive Plaintiff and the other members of the Class, or, in the alternative, acted with reckless disregard for the truth when they failed to ascertain and disclose the true facts in the statements made by them or other personnel of the Company to members of the investing public, including Plaintiff and the Class.

40.   As a result of the foregoing, the market price of LogMeIn securities was artificially inflated during the Class Period. In ignorance of the falsity of the Company's and the Individual Defendants' statements, Plaintiff and the other members of the Class relied on the statements described above and/or the integrity of the market price of LogMeIn securities during the Class Period in purchasing LogMeIn securities at prices that were artificially inflated as a result of the Company's and the Individual Defendants' false and misleading statements.

Class Action Complaint for Violation of the Federal Securities Laws

41.     Had Plaintiff and the other members of the Class been aware that the market price of LogMeIn securities had been artificially and falsely inflated by the Company's and the Individual Defendants' misleading statements and by the material adverse information which the Company's and the Individual Defendants did not disclose, they would not have purchased LogMeIn securities at the artificially inflated prices that they did, or at all.

42.     As a result of the wrongful conduct alleged herein, Plaintiff and other members of the Class have suffered damages in an amount to be established at trial.

43.     By reason of the foregoing, the Company and the Individual Defendants have violated Section 10(b) of the 1934 Act and Rule 10b-5 promulgated thereunder and are liable to the Plaintiff and the other members of the Class for substantial damages which they suffered in connection with their purchases of LogMeIn securities during the Class Period.

## COUNT II

### Violation of Section 20(a) of The Exchange Act
### Against The Individual Defendants

44.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

45.     During the Class Period, the Individual Defendants participated in the operation and management of the Company, and conducted and participated, directly and indirectly, in the conduct of the Company's business affairs. Because of their senior positions, they knew the adverse non-public information regarding the Company's business practices.

46.     As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Company's financial condition and results of operations, and to correct promptly any public statements issued by the Company which had become materially false or misleading.

47.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which the Company disseminated in the marketplace during the Class Period. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause the Company to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of the Company within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of LogMeIn securities.

48.     Each of the Individual Defendants, therefore, acted as a controlling person of the Company. By reason of their senior management positions and/or being directors of the Company, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, the Company to engage in the unlawful acts and conduct complained of herein. Each of the Individual Defendants exercised control over the general operations of the Company and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

49.     By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by the Company.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendants as follows:

A.     Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.     Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

Class Action Complaint for Violation of the Federal Securities Laws

C.      Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.      Awarding such other and further relief as this Court may deem just and proper.

### DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.


Dated: August 20, 2018                      Respectfully submitted,


                                            **THE ROSEN LAW FIRM, P.A.**

                                            By: /s/Laurence Rosen
                                            Laurence M. Rosen, Esq. (SBN 219683)
                                            355 S. Grand Avenue, Suite 2450
                                            Los Angeles, CA 90071
                                            Telephone: (213) 785-2610
                                            Facsimile: (213) 226-4684
                                            Email: lrosen@rosenlegal.com
                                            *Counsel for Plaintiff*

Class Action Complaint for Violation of the Federal Securities Laws